IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION

NAKEISHA SPEIGHT                                                         PLAINTIFF

V.                          NO. 3:14CV00136 JTR

CAROLYN W. COLVIN,
Acting Commissioner,
Social Security Administration                                           DEFENDANT

# MEMORANDUM AND ORDER

Plaintiff, Nakeisha Speight, has appealed the final decision of the Commissioner of the Social Security Administration denying her claim for Supplemental Security Income (SSI). According to Plaintiff, the Administrative Law Judge (ALJ) committed errors: (1) in evaluating her medical improvement; (2) in finding she did not meet Listing 12.05(C); (3) in posing a flawed hypothetical question to the vocational expert; (4) in being biased against her; (5) in determining her credibility and the activities of daily living she was capable of performing; and (6) in determining the credibility of her other witnesses. After carefully reviewing the record, the Court concludes that substantial evidence supports the Commissioner's decision and that the ALJ did not commit any legal error in denying Plaintiff's claim for SSI. 42 U.S.C. § 405(g).

In 2001, at the age of eight, Plaintiff was found to be disabled. The relevant rules dictated that a disability review occur when she became eighteen years old, on February 26, 2011. As a result of this review, her benefits were terminated.

She appealed, and, on May 7, 2013, the ALJ conducted an administrative hearing. (Tr. 24-59.) In a decision dated June 17, 2013, the ALJ relied on the testimony of a vocational expert to hold that Plaintiff was capable of performing unskilled work, with a specific vocational preparation rating of 2, including jobs as cafeteria worker or cleaner/housekeeper. (Tr. 17-18.) Accordingly, the ALJ concluded that, as an adult, Plaintiff was no longer disabled.

The Court will address each of the errors Plaintiff has assigned to the ALJ's decision in the order in which they are raised in her Appeal Brief. *Doc. 10.*

**Medical improvement:** Plaintiff cites *Steele v. Heckler*, 748 F.2d 492 (8th Cir. 1984), and other cases, holding that the ALJ has the burden of coming forward with evidence of medical improvement, a burden which she alleges the ALJ has not met. The Commissioner counters that the relevant law, Section 1614(a)(3)(H) of the Social Security Act, explicitly provides that the medical improvement standard does *not* apply to disability redeterminations at age eighteen. Rather, the Commissioner contends the standard to be applied is the definition of disability used for adults.

The statute clearly sets forth the appropriate standard, requiring the

2

Commissioner to apply "the criteria used in determining initial eligibility for individuals who are age 18 or older." 42 U.S.C. § 1382c(a)(3)(H)(iii). *None* of the cases cited by Plaintiff deal with disabled children who, after attaining the age of eighteen, are required to have their disability status, *as "adults,"* redetermined. Thus, under controlling law, the ALJ did *not* have the burden of coming forward with evidence of Plaintiff's "medical improvement." As a result, Plaintiff's first argument is without merit.

**Listing 12.05(C):** In *Maresh v. Barnhart*, 438 F.3d 897 (8th Cir. 2006), the Court set forth the following guidelines for determining if a claimant has met Listing 12.05:

> Maresh argues that the ALJ erred in finding that his impairments do not meet Listing 12.05:
>
> Mental retardation: Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
>
> * * *
>
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function.
>
> 20 C.F.R. Pt. 404, Subpt. P, App.1, § 12.05.

> Maresh and the Commissioner disagree about what the Listing requires. According to the Commissioner, the introductory paragraph of the Listing requires that the deficits in adaptive functioning are initially manifested before age 22. According to Maresh, the introductory paragraph is merely an introduction that sets no requirements. Under Maresh's interpretation, he need only meet part C's requirements of (1) an IQ score of 60 through 70; and (2) an additional and significant work-related limitation of function.
>
> This court agrees with the Commissioner that the requirements in the introductory paragraph are mandatory. The overall introduction to the mental disorders section states: "Listing 12.05 contains an introductory paragraph with the diagnostic description for mental retardation. It also contains four sets of criteria (paragraphs A through D). If your impairment satisfies the diagnostic description in the introductory paragraph and any one of the four sets of criteria, we will find that your impairment meets the listing." *Id* at § 12.00. [footnote omitted]. The cases Maresh cites are not to the contrary, because they do not discuss whether the introductory paragraph is mandatory. *See Chunn v. Barnhart,* 397 F.3d 667 (8th Cir. 2005); *Jones v. Barnhart,* 335 F.3d 697 (8th Cir. 2003); *Sird v. Chater,* 105 F.3d 401 (8th Cir. 1997). Under the plain language of the regulations, a claimant must demonstrate or support onset of the impairment before age 22. . .
>
> In sum, to meet Listing 12.05C, a claimant must show: (1) a valid verbal, performance, or full scale IQ of 60 through 70; (2) an onset of the impairment before age 22; and (3) a physical or other mental impairment imposing an additional and significant work-related limitation of function.

*Maresh*, 438 F.3d at 898-99. *See also Cheatum v. Astrue,* 388 Fed. Appx. 574 (8th Cir. 2010) (the introductory language of Listing 12.05 requires a plaintiff to demonstrate she suffered deficits in adaptive functioning).

Plaintiff argues that she meets Listing 12.05(C) based on: (1) her full scale IQ

4

and verbal IQ scores of 70;[1] and (2) her seizure disorder ("epilepsy"), which the ALJ found to be a severe impairment. (Tr. 10.) However, based on the clinical findings of two consultative psychologists, one of whom performed Plaintiff's IQ test, the ALJ found that Plaintiff's adaptive functioning indicated her actual level of intellectual ability is higher than her full scale IQ and verbal IQ score of 70. (Tr. 12.) Accordingly, the ALJ classified Plaintiff as having borderline intellectual functioning.[2]

To support this finding, the ALJ cited the reports of consultative examiners Drs. Wells and Jones on Plaintiff's adaptive functioning. Neither Dr. Jones, a clinical psychologist, nor Dr. Wells, a psychologist, diagnosed Plaintiff as mentally retarded. Rather, both physicians found her to function in the borderline range of intellectual ability. (Tr. 430, 498.) Dr. Jones further opined that Plaintiff did not experience adaptive functioning limitations apart from her academic difficulties, and that she would be able to cope with typical mental/cognitive demands of basic work-like tasks in settings where the tasks are repetitive and she had the chance to over learn her duties. (Tr. 431.) Similarly, Dr. Wells opined that Plaintiff had good attention and

---

[1] The ALJ acknowledged the valid full scale IQ and verbal scores of 70, obtained in testing in April 2011. (Tr. 12, 430.) Plaintiff also had a performance IQ score of 76.

[2] Borderline intellectual functioning is diagnosed in individuals with IQ scores in the range of 71 to 84. *Hulsey v. Astrue*, 622 F.3d 917, 920 n.3 (8th Cir. 2010).

5

concentration, adequate persistence, and had the capacity to complete work-like tasks within an acceptable timeframe. (Tr. 498.)[3]

Plaintiff had the burden of showing she met Listing 12.05(C). The introductory paragraph to this Listing includes a showing of deficits in adaptive functioning. Substantial evidence supports the ALJ's conclusion that Plaintiff's adaptive functioning was at a higher level than her IQ scores.[4] Thus, the ALJ did not err in concluding that Plaintiff failed to meet Listing 12.05(C).

**Flawed hypothetical question:** The ALJ's hypothetical question to the vocational expert included the following assumption: "Let's assume we have a younger individual . . . This individual has a high school education. It might have

---

[3]Both examiners pointed out several abilities and activities that were consistent with Plaintiff's functioning in the borderline range of intellectual activity, including: (1) her "relative strengths" in "verbal concept formation and social awareness and decision-making"; (2) her part-time janitorial work at her school; (3) her social skills, including the ability to make and keep friends and display "good expressive and receptive language abilities"; (4) her willingness to "work hard" and her ability to "respond well to redirection"; (5) her participation for three years in JROTC, where she won "ribbons" and was promoted to a staff sergeant; and (6) her ability to use a cell phone and a computer, including playing games and maintaining a Facebook page. (Tr. 428-32, 493-99.)

[4]Plaintiff's 2011 IQ scores were fairly consistent with scores obtained in testing in 2001 (verbal IQ 69; performance IQ 72; full scale IQ 68). (Tr. 375.) Thus, this case is distinguishable from *Muncy v. Apfel*, 247 F.3d 728 (8th Cir. 2001), cited by Plaintiff. In *Muncy*, the Court held that, because IQ scores are presumed to remain stable over time, the ALJ erred in failing to address a 25-point discrepancy between scores obtained six years apart.

6

been a certificate."[5] (Tr. 48.) Plaintiff argues the ALJ erred in overstating her education, and that the ALJ should have limited her to having a "marginal education" in the hypothetical question.

The ALJ overstated Plaintiff's education level in his hypothetical question. Although she finished high school, she testified that she was in special education classes in math and English "all the way through." (Tr. 30.) Thus, the issue the Court must now resolve is whether, in the context of the overall hypothetical question, this overstatement of her education would have resulted in Plaintiff being unable to perform the jobs identified by the vocational expert; in other words, did the ALJ's failure to include in his hypothetical question that Plaintiff graduated from high school, *but took special education classes in math and English*, result in the vocational expert identifying jobs she could not perform – thereby prejudicing the outcome of the case.

The hypothetical question limited Plaintiff to unskilled work, with restrictions to work where: interpersonal contact is only incidental to the work performed; the

---

[5]The ALJ continued in his hypothetical question with an assumption that the worker would be limited to unskilled work where: interpersonal contact is only incidental to the work performed; the complexity of any task could be learned and performed by rote, contain few variables, and require little judgment; and any supervision would be simple, direct, and concrete. (Tr. 48.)

7

complexity of any task could be learned and performed by rote, contained few variables, and required little judgment; and any supervision would be simple, direct and concrete. These limitations in the hypothetical question fairly captured the same limitations that would have applied if the ALJ had correctly stated that Plaintiff graduated from high school, after taking special education classes in math and English. Stated another way, the ALJ's hypothetical question took into account the mental and physical limitations, and accurately captured the work-related abilities, of someone who had graduated from high school while taking special education classes in math and English.

The jobs cited by the vocational expert require little preparation time to learn the job,[6] and one of the jobs (cafeteria worker) requires a reasoning level of 2, while the other (cleaner/housekeeper) requires a reasoning level of 1. These jobs correspond to the residual functional capacity (RFC) determined by the ALJ, and any error in misstating the hypothetical question did not result in any prejudice to Plaintiff.

**ALJ bias:** Plaintiff alleges that the ALJ is biased because he "repeatedly finds IQ scores invalid without proper justification" and "has a history of not following the law on this issue." Plaintiff further alleges that the ALJ displayed this bias by

---

[6]The jobs both have an SVP rating of 2, which requires up to one month training to learn the job.

8

interrupting the opening statement by her attorney. *Doc. 10 at 11.* After carefully reviewing the transcript of the administrative hearing, the Court concludes that it contains nothing to support Plaintiff's claim of bias, particularly since the record in this case contains the opinions of two psychologists who give numerous reasons to support *their conclusions* that Plaintiff's level of adaptive functioning places her in the range of borderline intellectual functioning. To establish an actionable claim of bias, Plaintiff would need to present *specific facts* to support that claim. Here, no such facts have been presented. *See Perkins v. Astrue*, 648 F.3d 892, 903 (8th Cir. 2011) (to demonstrate bias, the plaintiff must "show that the ALJ's behavior, in the context of the whole case, was 'so extreme as to display clear inability to render fair judgment'").

**ALJ's credibility analysis and his use of Plaintiff's daily activities to support his findings:** Citing *Polaski v. Heckler*, 751 F.2d 943 (8th Cir. 1984), the ALJ evaluated Plaintiff's credibility, concluding her "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision."[7] (Tr. 16.) Among other things, the ALJ considered Plaintiff's activities of daily living, finding her to have mild limitation in

---

[7] Plaintiff, in part, contends the ALJ made no credibility finding at all. *Doc. 10 at 15.* This contention is without merit.

this area. The ALJ also considered the objective medical evidence and the statements submitted by Plaintiff's friends and family members.

The ALJ explicitly discounted the opinion of treating physician Dr. Noel, who opined Plaintiff's epilepsy would interfere with work activity, noting such a finding was at odds with Dr. Noel's own treatment notes.[8] In addition, Plaintiff's testimony at the administrative hearing was that her last two seizures were in February 2013, and November 2011. (Tr. 31, 37.) The Court concludes that the ALJ appropriately discounted Dr. Noel's opinion. *See Choate v. Barnhart*, 457 F.3d 869 (8th Cir. 2006).

An ALJ's credibility determination is not a formulaic exercise in which each *Polaski* factor is required to be examined. Rather, it should be a discussion of those particular factors which are relevant to the facts in each case. *Brown v. Chater*, 87 F.3d 963 (8th Cir. 1996). Here, substantial evidence supports the ALJ's analysis of Plaintiff's credibility, and he committed no legal error in conducting his credibility analysis.

**Credibility of Plaintiff's other witnesses:** As previously noted, the ALJ

---

[8] According to Dr. Noel's treatment notes from September 2011, December 2012 and March 2013, Plaintiff's epilepsy was under "partial control"; she denied the presence of seizures; and she was taking medication as directed. (Tr. 511-16.) In April 2011, Plaintiff told Dr. Noel she did not know the date of her most recent or observed seizure, but had not had one since a medication adjustment over a year earlier. (Tr. 455.)

properly considered the statements and testimony of Plaintiff's other witnesses.[9] He committed no error in evaluating the credibility of those witnesses.

It is not the task of this Court to review the evidence and make an independent decision. Neither is it to reverse the decision of the ALJ because there is evidence in the record which contradicts his findings. The test is whether there is substantial evidence in the record as a whole which supports the decision of the ALJ. *E.g., Byes v. Astrue*, 687 F.3d 913, 915 (8th Cir. 2012). The Court has reviewed the entire record, including the briefs, the ALJ's decision, and the transcript of the hearing. The Court concludes that the record as a whole contains ample evidence that "a reasonable mind might accept as adequate to support [the] conclusion" of the ALJ in this case. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see also Reutter v. Barnhart*, 372 F.3d 946, 950 (8th Cir. 2004). The Court further concludes that the ALJ's decision is not based on legal error.

IT IS THEREFORE ORDERED that the final decision of the Commissioner is affirmed and Plaintiff's complaint is dismissed with prejudice.

---

[9]Plaintiff's mother testified at the hearing and submitted a written statement on her behalf. (Tr. 40-45, 185-86.) Three other individuals submitted written statements. (Tr. 187-92.)

IT IS SO ORDERED this 2nd day of July, 2015.

                                                   _____
                                      UNITED STATES MAGISTRATE JUDGE